# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **RONALD L. COX and** )<br>**REBECCA P. COX,** )<br> )<br> Plaintiffs, )<br> )<br>**v.** )<br> )<br>**SMITH & NEPHEW, INC.,** )<br> )<br> Defendant. )<br> ) | Civil Action No. **1:17-cv-03047-AT** |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW, the Plaintiffs, Ronald L. Cox and Rebecca P. Cox, and file this, their Complaint for damages against the Defendant, Smith & Nephew, Inc., and allege and state as follows:

### JURISDICTION

1. Plaintiffs are, and at all times relevant to this action were, citizens and residents of the State of Georgia with their place of residence located at 4098 Wyndam Hill Drive, Suwanee, Georgia 30024.

2. Defendant Smith & Nephew, Inc. ("Smith & Nephew") is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of Tennessee, which lists its principal office address as 1450 East Brooks Road, Memphis, Tennessee 38116 and may be served with process through its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046.

3. Complete diversity of citizenship exists within the purview of 28 U.S.C. § 1332. At all times relevant to this cause of action, the Plaintiff/Defendant had the requisite minimum contacts

with the State of Georgia, and the amount in controversy in this action exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

**GENERAL CLAIMS FOR RELIEF**

4.      This is a strict products liability, negligence, and loss of consortium action arising out of Defendant Smith & Nephew's violations of various sections of the Federal Code of Regulations and the damages suffered by Plaintiff Ronald L. Cox and his wife Rebecca P. Cox as a result thereof.

5.      Defendant Smith & Nephew is a developer and manufacturer of joint replacement systems.  Since 2006, Defendant, Smith & Nephew, Inc. has manufactured, introduced and/or delivered the Birmingham Hip Resurfacing System (hereinafter "BHR") into the stream of interstate commerce, including the state of Georgia.  The BHR is a metal-on-metal hip resurfacing prosthesis. It is comprised of the following two (2) components:

      a.      Birmingham Resurfacing Femoral Head; and

      b.      Birmingham Hip Resurfacing Acetabular Cup.

6.      Before commercially distributing the BHR in the United States, federal law required Defendant Smith & Nephew to submit an application for premarket approval ("PMA") of the device to the Secretary of Health and Human Services.  On May 9, 2006, the Food and Drug Administration ("FDA") completed its review of Defendant Smith & Nephew's PMA application for the BHR. Based on the materials submitted by Defendant, Smith & Nephew, the FDA conditionally approved the BHR for commercial distribution.

7.      The conditional approval letter from the FDA stated that "[c]ommercial distribution of a device that is not in compliance with these conditions is a violation of the [Food, Drug and Cosmetic] act, [21 U.S.C. §§301, et seq.]."

8.      On or about December 17, 2007, Plaintiff Ronald L. Cox was admitted to Gwinnett Medical Center in Lawrenceville, Gwinnett County, Georgia, for the purpose of undergoing a right total hip arthroplasty by Gary A. Levengood, M.D. (a non-party herein).  At the time of said surgery, Dr. Levengood utilized and implanted the following components:

a.      Smith & Nephew BHR Acetabular Cup, Size 60 mm; REF 74120160; LOT 078966;

b.      Smith & Nephew Modular Femoral Head, Size 54 mm; REF 74122554; LOT 11000;

c.      Smith & Nephew Modular Head Sleeve, Size 40 mm; REF 74222200; LOT 07EW11882;

d.      Smith & Nephew Synergy Standard Offset Porous Plus HA Femoral Component, Size 14; REF 71309014; LOT 07FM11746A.

9.      On or about June 13, 2016, laboratory results showed toxic levels of cobalt and chromium present in Plaintiff's blood from the metal-on-metal Smith & Nephew components implanted on December 17, 2007.

10.     On or about August 18, 2016, Plaintiff underwent a revision surgery at Northside Hospital Forsyth for chronic debilitating right hip pain and metal toxicity.  Said procedure was performed by Charles A. DeCook, M.D. (a non-party herein) and consisted of revising all previously placed hardware except for the Synergy Femoral Stem.  The following components were utilized by Dr. DeCook in the revision surgery:

a.      DePuy Pinnacle 62 mm acetabular component;

b.      DePuy Pinnacle +4 neutral 36 mm polyethylene acetabular liner;

c.      Two 6.5 mm x 35 mm DePuy Pinnacle cancellous bone screws;

d.      Smith & Nephew Oxinium 12/14 taper femoral head, size 36 mm L/+8.

11.     During the revision surgery of August 18, 2016, it was discovered that, in addition to the toxic levels of cobalt and chromium and chronic right hip pain, Plaintiff had developed a large

psuedotumor and suffered deterioration of his anterior acetabulum wall as a result of the Smith & Nephew metal-on-metal components.

### FIRST CLAIM FOR RELIEF

**STRICT PRODUCTS LIABILITY BASED ON VIOLATIONS OF 21 C.F.R. 820.30(f) and (g); 21 C.F.R. 820.80 (c) and (d); 21 C.F.R. 820.100; 21 C.F.R. 820.198**

12.        Plaintiffs herein incorporate, reassert and reallege the allegations set forth above in paragraphs 1-11 by reference as if fully set forth herein below.

13.        The BHR Acetabular Cup implanted in Plaintiff Ronald Cox on December 17, 2007, was designed and/or manufactured in violation of the Federal Food, Drug and Cosmetic Act ("Act") and regulations promulgated pursuant to it.

14.        At the time the BHR Acetabular Cup implanted in Plaintiff Ronald Cox on December 17, 2007 left the control of Defendant Smith & Nephew, it was unreasonably dangerous due to non-compliance by Defendant Smith & Nephew with the Act, and the regulations promulgated pursuant to it in one or more of the following ways:

a.        Failed to accurately establish the in vivo life expectancy of the BHR, in violation of 21 C.F.R. 820.30(f);

b.        Failed to validate the anticipated wear of the acetabular cup prior to its release into commercial distribution, in violation of 21 C.F.R. 820.30(g);

c.        Failed to establish and maintain appropriate reliability assurance testing to validate the BHR design both before and after its entry into the marketplace, in violation of 21 C.F.R. 820.30 (g);

d.        Failed to conduct adequate bio-compatibility studies to determine the BHR's latent propensity to effuse metallic contaminants into the human blood and tissue;

e.        Failed to identify the component discrepancy, in violation of 21 C.F.R. 820.80(c);

     f.     Failed to capture the component discrepancy or defect during their Final Acceptance Activities, in violation of 21 C.F.R. 820.80(d);

     g.     Failed to establish and maintain procedures for implementing corrective and preventative action in response to, *inter alia*, complaints regarding the BHR, returned BHR, and other quality problems associated with the BHR, in violation of 21 C.F.R. 820.100;

     h.     Failed to appropriately respond to adverse incident reports that strongly indicated the acetabular component was Malfunctioning [as defined in 21 C.F.R. 803.3], or otherwise not responding to its Design Objection Intent, in violation of 21 C.F.R. 820.198;

     i.     Failed to conduct complete device investigations on returned BHR and components, including the acetabular component, in violation of 21 C.F.R. 820.198; and/or

     j.     Continued to inject BHR into the stream of interstate commerce when it knew, or should have known, that the acetabular component was Malfunctioning [as defined in 21 C.F.R. 803.3] or otherwise not responding to its Design Objective Intent.

15.    As a direct and proximate result of Defendant Smith and Nephew's violations of one or more of these federal statutory and regulatory standards of care, a BHR acetabular cup was implanted in Plaintiff Ronald Cox and failed, and such failure directly caused and/or contributed to the severe and permanent injuries sustained and endured by Plaintiff Ronald Cox, as defined in 21 C.F.R. 803.3.  As a direct result, Plaintiff Ronald Cox endured pain and suffering, including, but not limited to, pseudotumor formation, chronic right hip pain, and toxic blood levels of cobalt and/or chromium.  Plaintiff Ronald Cox has required additional and debilitating surgeries and has incurred significant medical expenses in the past and will incur additional medical expenses in the future; both past and future wage loss; physical pain and suffering, both past and future; mental anguish and emotional distress, both past and future.

16.    This cause of action is based entirely on the contention that Defendant Smith & Nephew violated federal safety statutes and regulations.  Plaintiff does not bring the underlying

action as an implied statutory cause of action, but rather he is pursuing parallel state common law claims based upon Defendant Smith & Nephew's violations of the applicable federal regulations.

17.     Under Georgia law, Defendant, Smith & Nephew's violations of the aforementioned federal statutes and regulations establish a *prima facie* case of strict liability in tort.

18.     Thus, under Georgia common law, a money damages remedy exists for violation of the Act and regulations promulgated thereunder which results in an unreasonably dangerous product proximately causing injuries, and there is no need for the Georgia Legislature to act in order to create such a remedy.

19.     The Act contains an express preemption provision, 21 U.S.C. §360(k), which in relevant part states: "no state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement –(1) which is different from, or in addition to, any requirement applicable under this Act [21 USCS §§301, et seq.] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act [21 USCS §§301, et seq.]."

20.     The cause of action set forth in this Claim for Relief is not preempted by 21 U.S.C. §306(k) because the violations alleged are all based on an exclusively federal statutory and regulatory set of requirements which include no "requirement which is different from, or in addition to, any requirement applicable under" the Act and regulations promulgated thereunder. *See; Bausch v. Stryker,* 630 F.3d 546, 556 (7th Cir. 2010) (claims for negligence and strict products liability relating to a Class III medical device were not expressly preempted by federal law to the extent they were based on the defendants' violations of federal law).  As such, the claims set forth herein contain requirements that are parallel to the Act and regulations promulgated thereunder.

21.     As a direct and proximate result of Defendant Smith & Nephew's aforementioned actions, Plaintiff Ronald Cox prays for judgment against Defendant Smith & Nephew in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## SECOND CLAIM FOR RELIEF

### NEGLIGENCE BASED ON VIOLATIONS OF
### 21 C.F.R. 820.30(f) and (g); 21 C.F.R. 820.80 (c) and (d); 21 C.F.R. 820.100;
### 21 C.F.R. 820.198

22.     Plaintiffs herein incorporate, reassert and reallege the allegations set forth above in paragraphs 1-21 by reference as if fully set forth herein below.

23.     The BHR acetabular cup implanted in Plaintiff Ronald Cox's right hip on December 17, 2007 was designed and/or manufactured in violation of the Act and regulations promulgated to it.

24.     It was the duty of Defendant Smith & Nephew to comply with the Act, and the regulations promulgated pursuant to it, yet, notwithstanding this duty, Defendant Smith & Nephew violated the Act in one or more of the following ways:

a.     Failed to accurately establish the in vivo life expectancy of the BHR, in violation of 21 C.F.R. 820.30(f);

b.     Failed to validate the anticipated wear of the acetabular cup prior to its release into commercial distribution, in violation of 21 C.F.R. 820.30(g);

c.     Failed to establish and maintain appropriate reliability assurance testing to validate the BHR design both before and after its entry into the marketplace, in violation of 21 C.F.R. 820.30 (g);

d.     Failed to conduct adequate bio-compatibility studies to determine the BHR's latent propensity to effuse metallic contaminants into the human blood and tissue;

e.     Failed to identify the component discrepancy, in violation of 21 C.F.R. 820.80(c);

f.     Failed to capture the component discrepancy or defect during their Final Acceptance Activities, in violation of 21 C.F.R. 820.80(d);

g.    Failed to establish and maintain procedures for implementing corrective and preventative action in response to, *inter alia*, complaints regarding the BHR, returned BHR, and other quality problems associated with the BHR, in violation of 21 C.F.R. 820.100;

h.    Failed to appropriately respond to adverse incident reports that strongly indicated the acetabular component was Malfunctioning [as defined in 21 C.F.R. 803.3], or otherwise not responding to its Design Objection Intent, in violation of 21 C.F.R. 820.198;

i.    Failed to conduct complete device investigations on returned BHR and components, including the acetabular component, in violation of 21 C.F.R. 820.198; and/or

j.    Continued to inject BHR into the stream of interstate commerce when it knew, or should have known, that the acetabular component was Malfunctioning [as defined in 21 C.F.R. 803.3] or otherwise not responding to its Design Objective Intent.

25.    As a direct and proximate result of Defendant Smith and Nephew's violations of one or more of these federal statutory and regulatory standards of care, a BHR acetabular cup was implanted in Plaintiff Ronald Cox and failed, and such failure directly caused and/or contributed to the severe and permanent injuries sustained and endured by Plaintiff Ronald Cox, as defined in 21 C.F.R. 803.3.  As a direct result, Plaintiff Ronald Cox endured pain and suffering, including, but not limited to pseudotumor formation, chronic right hip pain, toxic blood levels of cobalt and chromium, additional and debilitating surgery, significant past and future medical; both past and future wage loss; physical pain and suffering, both past and future; mental anguish and emotional distress, both past and future.

26.    This cause of action is based entirely on the contention that Defendant Smith & Nephew violated federal safety statutes and regulations.  Plaintiff does not bring the underlying action as an implied statutory cause of action, but rather he is pursuing parallel state common law claims based upon Defendant Smith & Nephew's violations of the applicable federal regulations.

27.     Under Georgia law, Defendant, Smith & Nephew's violations of the aforementioned federal statutes and regulations establish a *prima facie* case of negligence.

28.     Thus, under Georgia common law, a money damages remedy exists for violation of the Act and regulations promulgated thereunder which results in an unreasonably dangerous product proximately causing injuries, and there is no need for the Georgia Legislature to act in order to create such a remedy.

29.     The Act contains an express preemption provision, 21 U.S.C. §360(k), which in relevant part states: "no state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement –(1) which is different from, or in addition to, any requirement applicable under this Act [21 USCS §§301, et seq.] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act [21 USCS §§301, et seq.]."

30.     The cause of action set forth in this Claim for Relief is not preempted by 21 U.S.C. §306(k) because the violations alleged are all based on an exclusively federal statutory and regulatory set of requirements which include no "requirement which is different from, or in addition to, any requirement applicable under" the Act and regulations promulgated thereunder. *See; Bausch v. Stryker,* 630 F.3d 546, 556 (7th Cir. 2010) (claims for negligence and strict products liability relating to a Class III medical device were not expressly preempted by federal law to the extent they were based on the defendants' violations of federal law).  As such, the claims set forth herein contain requirements that are parallel to the Act and regulations promulgated thereunder.

31.     As a direct and proximate result of Defendant Smith & Nephew's aforementioned actions, Plaintiff Ronald Cox prays for judgment against Defendant Smith & Nephew, Inc. in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### THIRD CLAIM FOR RELIEF

### STRICT PRODUCTS LIABILITY BASED ON VIOLATIONS OF
### 21 U.S.C. §360e; 21 U.S.C. §352(q) and (r); 21 C.F.R. §814.39

32.     Plaintiffs herein incorporate, reassert and reallege the allegations set forth above in paragraphs 1-31 by reference as if fully set forth herein below.

33.     On December 17, 2007, when Plaintiff Ronald Cox underwent a total right hip arthroplasty, the Defendant's BHR acetabular component was implanted with Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head. All but the BHR acetabular component are Class II devices designed and/or manufactured by Defendant Smith & Nephew, Inc. and placed into the interstate stream of commerce.

34.     The decision to implant Defendant's BHR acetabular component with Defendant's Synergy Femoral Stem, Modular Head and Modular Sleeve was based on specific express and implied representations made by Defendant Smith & Nephew to Plaintiff Ronald Cox's surgeon and others, including:

   a.     Marketing materials such as the Smith & Nephew Birmingham Hip Resurfacing System "Metal-on-Metal:  Questions & Answers" that expressly states, "If the acetabular component is well positioned, well fixed and undamaged it is totally acceptable to leave the cup in-situ;"

   b.     Smith & Nephew training provided to Plaintiff Ronald Cox's surgeon and his dealings with Smith & Nephew's sales representative that led him to understand that it was permissible to use Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head **with** Defendant's BHR acetabular component;

   c.     Smith & Nephew training courses attended by Plaintiff Ronald Cox's surgeon that included written materials and instructional videos that did not advise him that it was not permissible to use Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head **with** Defendant's BHR acetabular component;

     d.     Defendant Smith & Nephew's sales representative's conduct of bringing Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head to total hip arthroplasty and revision procedures on other patients of Ronald Cox's surgeon to be available for use leading him to believe that they were safe to use together;

     e.     Defendant Smith & Nephew's representative's conduct of bringing Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head to Plaintiff Ronald Cox's total hip arthroplasty surgery on December 17, 2007, and without telling his surgeon that said Class II components could not be safely used with the BHR acetabular component; and/or

     f.     The fact that if Defendant Smith & Nephew's sales representatives had told Plaintiff Ronald Cox's surgeon that the Smith & Nephew BHR acetabular component could not be used with the Synergy Femoral Stem, Modular Femoral Head and Modular Head Sleeve and that the BHR acetabular component could only be used with the BHR femoral head and that such use was in violation of the PreMarket Approval granted by the FDA, his surgeon would have never used Smith & Nephew's BHR acetabular component in Plaintiff's total hip arthroplasty of December 17, 2007.

     35.     Defendant Smith & Nephew's marketing, distribution, training and/or permitted use of its Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head with its BHR acetabular cup violate the Act, the regulations promulgated to it and the PreMarket Approval Order granted/issued by the FDA.  Specifically, the conduct of its sales representatives, including the training it provided to surgeons such as Ronald Cox's surgeon, and its marketing materials resulted in Plaintiff's surgeon using an unreasonably dangerous device in Plaintiff and a combination of devices which were not approved by the FDA to be used in conjunction with one another.

     36.     Defendant Smith & Nephew's marketing, distribution, training and/or permitted use of its Modular Femoral Head with its BHR acetabular cup also violates, among other things, the Modular Femoral Head's 510(k) approval by the FDA because the Modular Femoral Heads were only approved for articulation against the natural acetabulum as the intended use, not in combination

with an artificial acetabular cup like the BHR.

37.     It was the duty of Defendant Smith & Nephew, Inc. to comply with the Act, the regulations promulgated pursuant to it, and the PreMarket Approval Order granted/issued by the FDA, yet, notwithstanding this duty, Defendant Smith & Nephew violated the Act and the PreMarket Approval Order in one or more of the following ways, as evidenced by the conduct described above, among other conduct:

    a.    Failed to submit a PMA supplement for review and approval by the FDA. 21 C.F.R.§814.39;

    b.    Defendant Smith & Nephew sold, distributed and permitted use of its devices in violation of the regulations prescribed under 21 U.S.C. §360j(e). 21 U.S.C. § 352(q);

    c.    Failed to restrict the use of the BHR acetabular cup with the BHR femoral head. 21 U.S.C. §352(r);

    d.    Failed to comply with the requirements of 21 U.S.C. §§§ 360h, 360i, and 360l;

    e.    Failed to implement a proper training course for surgeons using the BHR system as required by the PreMarket Approval Order and in violation of the Act;

    f.    Failed to properly train surgeons using Defendant's BHR system on the permitted use of the BHR system and its respective component parts and failed to properly train and/or instruct surgeons on what products/devices surgeons could and/or could not use in a total hip arthroplasty; and/or

    g.    Failed to, among other things, properly train and instruct surgeons on the proper and intended use of the Modular Femoral Head and otherwise comply with the FDA's 510k.

38.     As a direct and proximate result of Defendant Smith & Nephew's improper training and marketing to U.S. surgeons on the implantation of the BHR cup with its Modular Femoral Head and Modular Head Sleeve and Synergy Femoral Stem in violation of one or more of these federal statutory and regulatory standards, an unreasonably dangerous BHR acetabular cup and an

unreasonably dangerous combination of Smith & Nephew products (Modular Femoral Head, Modular Head Sleeve and Synergy Femoral Stem) which were not approved for use with one another, were implanted in Plaintiff Ronald Cox and failed.  Such failure directly caused and/or contributed to the severe and permanent injuries sustained and endured by Plaintiff Ronald Cox, as defined in 21 C.F.R. 803.3.  As a direct result of the aforementioned conduct of Defendant Smith & Nephew, Plaintiff Ronald Cox endured pain and suffering, including, but not limited to, pseudotumor formation, chronic and debilitating right hip pain, toxic blood levels of cobalt and chromium, additional and debilitating surgeries, significant past and future medical; both past and future wage loss; physical pain and suffering, both past and future; mental anguish and emotional distress, both past and future.

39.    This cause of action is based entirely on the contention that Defendant Smith & Nephew violated federal safety statutes and regulations. Plaintiff does not bring the underlying action as an implied statutory cause of action, but rather he is pursuing parallel state common law claims based upon Defendant Smith & Nephew's violations of the applicable federal regulations.

40.    Under Georgia law, Defendant, Smith & Nephew's violations of the aforementioned federal statutes and regulations establish a *prima facie* case of strict liability in tort.

41.    Thus, under Georgia common law, a money damages remedy exists for violation of the Act and regulations promulgated thereunder which results in an unreasonably dangerous product proximately causing injuries, and there is no need for the Georgia Legislature to act in order to create such a remedy.

42.    The Act contains an express preemption provision, 21 U.S.C. §360(k), which in relevant part states: "no state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement – (1) which is different from, or in

13

addition to, any requirement applicable under this Act [21 USCS §§301, et seq.] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act [21 USCS §§301, et seq.]."

43.     The cause of action set forth in this Claim for Relief is not preempted by 21 U.S.C. §306(k) because the violations alleged are all based on an exclusively federal statutory and regulatory set of requirements which include no "requirement which is different from, or in addition to, any requirement applicable under" the Act and regulations promulgated thereunder. *See; Bausch v. Stryker,* 630 F.3d 546, 556 (7th Cir. 2010) (claims for negligence and strict products liability relating to a Class III medical device were not expressly preempted by federal law to the extent they were based on the defendants' violations of federal law). As such, the claims set forth herein contain requirements that are parallel to the Act and regulations promulgated thereunder.

44.     As a direct and proximate result of Defendant Smith & Nephew's aforementioned actions, Plaintiff Ronald Cox prays for judgment against Defendant Smith & Nephew in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**FOURTH CLAIM FOR RELIEF**

**NEGLIGENCE BASED ON VIOLATIONS OF**
**21 U.S.C. §360e; 21 U.S.C. §360e and 21 C.F.R. §814.39 and GA Code §10-1-372 (2016);**
**§10-1-420; §10-1-421(a) and §10-1-399(a)**

45.     Plaintiffs herein incorporate, reassert and reallege the allegations set forth above in paragraphs 1-44 by reference as if fully set forth herein below.

46.     On December 17, 2007, when Plaintiff Ronald Cox underwent a total right hip arthroplasty, the Defendant's BHR acetabular component was implanted with Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head. All but the BHR acetabular component are Class II devices designed and/or manufactured by Defendant

Smith & Nephew and placed into the interstate stream of commerce.

47.     The decision to implant Defendant's BHR acetabular component with Defendant's Synergy Femoral Stem, Modular Head and Modular Sleeve was based on specific express and implied representations made by Defendant Smith & Nephew to Plaintiff Ronald Cox's surgeon and others, including:

a.     Marketing materials such as the Smith & Nephew Birmingham Hip Resurfacing System Metal-on-Metal: Questions & Answers" that expressly states, "If the acetabular component is well positioned, well fixed and undamaged it is totally acceptable to leave the cup in-situ;"

b.     Smith & Nephew training provided to Plaintiff Ronald Cox's surgeon and his dealings with Smith & Nephew's sales representatives that led him to understand that it was permissible to use Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head **with** Defendant's BHR acetabular component;

c.     Smith & Nephew training courses attended by Plaintiff Ronald Cox's surgeon that included written materials and instructional videos that did not advise him that it was not permissible to use Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head **with** Defendant's BHR acetabular component;

d.     Defendant Smith & Nephew's sales representative's conduct of always bringing Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head to total hip arthroplasty and revision procedures on other patients of Plaintiff Ronald Cox's surgeon to be available for use leading him to believe that they were safe to use together;

e.     Defendant Smith & Nephew's representative's conduct of bringing Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head to Plaintiff Ronald Cox's total hip arthroplasty surgery on December 17, 2007, and without telling Plaintiff's surgeon that said Class II components could not be safely used with the BHR acetabular component; and/or

f.     The fact that if Defendant Smith & Nephew's sales representatives had told Plaintiff Ronald Cox's surgeon that the Smith & Nephew BHR acetabular component could not be used with the Synergy Femoral Stem, Modular Femoral Head and Modular Head Sleeve and that the BHR acetabular component could only be used with the BHR femoral head and that such use

was in violation of the PreMarket Approval granted by the FDA, Plaintiff's surgeon would have never used Smith & Nephew's BHR acetabular component in Plaintiff's total hip arthroplasty of December 17, 2007.

48.     Defendant Smith & Nephew's marketing, distribution and/or permitted use of its Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head with its BHR acetabular cup was in violation of the Act and regulations promulgated to it, and the laws of the State of Georgia.  Specifically, the conduct of its sales representatives, the training it provided to surgeons such as Plaintiff Ronald Cox's, and its marketing materials resulted in Plaintiff's surgeon using an unreasonably dangerous device in Plaintiff.

49.     It was the duty of Defendant Smith & Nephew to comply with the Act, and the regulations promulgated pursuant to it, yet, notwithstanding this duty, Defendant Smith & Nephew violated the Act in one or more of the following ways, as evidenced by the conduct described above, among other ways:

a.     Failed to submit a PMA supplement for review and approval by the FDA. 21 C.F.R. §814.39;

b.     Defendant Smith & Nephew sold, distributed and permitted use of its devices in violation of the regulations prescribed under 21 U.S.C. §360j(e). 21 U.S.C. § 352(q);

c.     Failed to restrict the use of the BHR acetabular cup with the BHR femoral head. 21 U.S.C. §352(r); and

d.     Failed to comply with the requirements of 21 U.S.C. §§§ 360h, 360i, and 360l.

50.     It was the duty of Defendant Smith & Nephew, Inc. to comply with the laws of the State of Georgia, yet, notwithstanding this duty, Defendant violated O.C.G.A. §§ 10-1-372, 10-1-399(a), 10-1-420, and 10-1-421(a) in one or more of the following ways, as evidenced by the conduct described above, among other ways:

a.  Defendant represented that the subject components were approved for use with one another;

b.  Defendant caused misunderstaning as to the approval and/or certification of the subject components with one another;

c.  Defendant represented that the subject components had constituent materials that were approved for use with one another;

d.  Defendant represented that the subject components were of a particular standard, quality and/or grade and they were not; and/or

e.  Defendant engaged in false and misleading conduct which led U.S. surgeons to believe and understand that the subject components were safe, effective, permitted and intended to be used with one another when they were not and with the knowledge that the use of the subject components together would lead to serious injury and/or harm to patients in which they were used.

51.     In addition to the above stated claims, Defendant Smith & Nephew's marketing, distribution, training and/or permitted use of its Modular Femoral Head with its BHR acetabular cup also violates, among other things, the Modular Femoral Head's 510(k) approval by the FDA because the Modular Femoral Heads were only approved for articulation against the natural acetabulum as the intended use, not in combination with an artificial acetabular cup like the BHR.  For example, Defendant Smith & Nephew was negligent in failing to, among other things, properly train and instruct surgeons on the proper and intended use of the Modular Femoral Head and otherwise comply with the FDA's 510k.

52.     As a direct and proximate result of Defendant Smith & Nephew's improper training and marketing to U.S. surgeons on the implantation of the BHR cup with its Modular Femoral Head and Modular Head Sleeve and Synergy Femoral Stem in violation of one or more of these federal statutory and regulatory standards and the laws of the State of Georgia, an unreasonably dangerous BHR acetabular cup and an unreasonably dangerous combination of Smith & Nephew products (Modular Femoral Head, Modular Head Sleeve and Synergy Femoral Stem) which were not

approved for use with one another, were implanted in Plaintiff Ronald Cox and failed, and such failure directly caused and/or contributed to the severe and permanent injuries sustained and endured by Plaintiff Ronald Cox, as defined in 21 C.F.R. 803.3. As a direct result of the aforementioned conduct of Defendant Smith & Nephew, Plaintiff Ronald Cox endured pain and suffering, including, but not limited to, pseudotumor formation, chronic and debilitating right hip pain, toxic blood levels of cobalt and chromium, additional and debilitating surgery, significant past and future medical expense; both past and future wage loss; physical pain and suffering, both past and future; mental anguish and emotional distress, both past and future.

53.     This cause of action is based entirely on the contention that Defendant, Smith & Nephew violated federal safety statutes and regulations and the laws of the State of Georgia. Plaintiff does not bring the underlying action as an implied statutory cause of action, but rather he is pursuing parallel state common law claims based upon Defendant Smith & Nephew's violations of the applicable federal regulations.

54.     Under Georgia law, Defendant Smith & Nephew's violations of the aforementioned federal statutes and regulations establish a *prima facie* case of negligence. See O.C.G.A. §§ 10-1-372, 10-1-399(a), 10-1-420, and 10-1-421(a).

55.     Thus, under Georgia common law, and pursuant to O.C.G.A. §§ 10-1-372, 10-1-399(a),10-1-420, and 10-1-421(a), a money damages remedy exists for violation of the Act and regulations promulgated thereunder which results in an unreasonably dangerous product proximately causing injuries, and there is no need for the Georgia Legislature to act in order to create such a remedy.

56.     The Act contains an express preemption provision, 21 U.S.C. §360(k), which in relevant part states: "no state or political subdivision of a state may establish or continue in effect

with respect to a device intended for human use any requirement –(1) which is different from, or in addition to, any requirement applicable under this Act [21 USCS §§301, et seq.] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act [21 USCS §§301, et seq.]."

57.     The cause of action set forth in this Claim for Relief is not preempted by 21 U.S.C. §306(k) because the violations alleged are all based on an exclusively federal statutory and regulatory set of requirements which include no "requirement which is different from, or in addition to, any requirement applicable under" the Act and regulations promulgated thereunder. *See; Bausch v. Stryker,* 630 F.3d 546, 556 (7th Cir. 2010) (claims for negligence and strict products liability relating to a Class III medical device were not expressly preempted by federal law to the extent they were based on the defendants' violations of federal law). As such, the claims set forth herein contain requirements that are parallel to the Act and regulations promulgated thereunder.

58.     As a direct and proximate result of Defendant Smith & Nephew's aforementioned actions, Plaintiff Ronald Cox prays for judgment against Defendant Smith & Nephew in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## FIFTH CLAIM FOR RELIEF

### STATE LAW AND COMMON LAW CLAIMS OF STRICT LIABILITY AND NEGLIGENCE FOR CLASS II DEVICES

59.     Plaintiffs herein incorporate, reassert and reallege the allegations set forth above in paragraphs 1-58 by reference as if fully set forth herein below.

60.     The Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head that were implanted in Plaintiff Ronald Cox on December 17, 2007 were designed, manufactured and distributed by Defendant Smith & Nephew and placed into the stream of

interstate commerce, including the state of Georgia, by Defendant.  Said components were defective in design and/or manufacture.  Said defects existed when the components left the hands of Defendant, making the components unreasonably dangerous beyond the contemplation of the ordinary user.  Defendant is therefore strictly liable to Plaintiff under the doctrine of manufacturers' products liability.

61.    Defendant Smith & Nephew further breached applicable implied and express warranties, including warranties of merchantability and fitness for a particular purpose.   Further, Defendant Smith & Nephew failed to provide appropriate warnings regarding the potential dangers associated with the use of said components, including warnings regarding the risk of a failure such as was experienced by Plaintiff.

62.    As a direct and proximate result of the design and/or manufacturing defects, failure to warn, and breach of express and implied warranties related to Defendant's Synergy Porous High Offset Femoral Component, Modular Head Sleeve and Modular Femoral Head designed, manufactured, distributed, sold and/or placed into the stream of commerce by the Defendant, Plaintiff suffered severe and permanent injuries, including, but not limited to pseudotumor formation, chronic and debilitating right hip pain, toxic blood levels of cobalt and chromium, additional and debilitating surgeries, significant past and future medical; both past and future wage loss; physical pain and suffering, both past and future; mental anguish and emotional distress, both past and future; and has been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

63.    As a direct and proximate result of the willful, wanton, intentional acts, reckless and/or the willful, wanton, intentional acts, reckless and/or the willful, wanton, intentional and reckless failures to act by Defendant Smith & Nephew, Plaintiff Ronald Cox suffered the aforesaid

damages and, as such, Plaintiff demands that punitive damages be awarded against Defendant Smith & Nephew.

### SIXTH CLAIM FOR RELIEF

### LOSS OF CONSORTIUM

64.     Plaintiffs herein incorporate, reassert and reallege the allegations set forth above in paragraphs 1-63 by reference as if fully set forth herein below.

65.     At all times relevant to this Complaint, Plaintiff Rebecca Cox has been the lawful wife of Plaintiff Ronald Cox.

66.     As the proximate result of Defendant Smith & Nephew's  actions and/or omissions, Plaintiff Rebecca Cox has been deprived of the society, companionship, services, and consortium of her husband, Plaintiff Ronald Cox, thereby entitling her to damages to be determined by a jury of her peers.

WHEREFORE, Plaintiffs Ronald Cox and Rebecca Cox pray that this Court enter judgment against the Defendant in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest and costs of this action, and for such further relief as this Court deems just and reasonable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

August 24, 2017                              Respectfully submitted,

                                             /s/ R. Paul Hart_____
                                             R. Paul Hart, Esq.
                                             Ga Bar No. 333694
                                             paul@kmtrial.com
                                             Jeremy S McKenzie, Esq.
                                             Ga Bar No. 435566
                                             jeremy@kmtrial.com

KARSMAN, McKENZIE & HART
21 West Park Avenue
Savannah, Georgia 31401
Telephone:     912-335-4977
Fax:               912-388-2503

ATTORNEYS FOR PLAINTIFFS